UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

FILED

JUN 13 1996

CLERK, U.S. DIST. COURT
BY _____ DEPUTY

UNITED STATES OF AMERICA )
) NO. W96CA221
V. )
) Motion Under 28 U.S.C. § 2255
JON HAROLD ROYAL )

W - 90 - CR - 104

## BRIEF IN SUPPORT OF MOTION TO VACATE CONVICTION AND SENTENCE UNDER 28 U.S.C. § 2255

Petitioner, JON HAROLD ROYAL, respectfully submits this Brief in support of his motion to vacate the judgment and sentence rendered herein in the above cause, upon the following grounds:

### GROUND ONE

#### A.

#### INEFFECTIVE COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

The evidence at an evidentiary hearing will establish the following extra-judicial facts:

> The Government prosecutor, through JON ROYAL's attorney Chris Flood, offered ROYAL a plea bargain wherein, in return for his cooperation, the Government would recommend a sentence of 15 months confinement for a post-guidelines offense and not prosecute him on any other charges. Said Government prosecutor stated at the time of said offer that such offer would be extended for only three days thereafter. ROYAL asked his said attorney to come to Waco to talk with him about the offer or get him permission to come to Houston to discuss it. He told ROYAL he would get him permission to come to Houston to see what evidence was against him and discuss the offer but he never did so. ROYAL wanted to accept said offer and would have demanded to do so if his said attorney, Chris Flood, had not told him that he would not represent him if he agreed to cooperate with the Government. Since ROYAL did not think he had the money necessary to employ another attorney he failed to accept said offer within the three day period of its existence. At the time of said plea offer, ROYAL still owed said attorney a large portion of the agreed fee and if said plea bargain had been accepted ROYAL would not have paid nor owed said

1

287

large remaining portion of the fee.  ROYAL's attorney never advised him that if convicted he might face a life sentence.  At all times prior to his sentence, he was told by and was caused to believe by said attorney that if he was convicted he would face a maximum 20 year sentence.  Also if Petitioner had known that he faced a possible life sentence at the time he was told about said plea bargain he would have demanded to accept it and would have personally called the United States Attorney to accept it even had he been unable to contact his attorney.

After trial and conviction, a PSR was filed and acted upon by the Court, designating the maximum punishment to be <u>life imprisonment</u>. The Trial Court assessed sentence under the Guidelines at 30 years.

The law is now settled in all circuits that failure of counsel to recommend acceptance of a certain and obvious highly favorable plea offer constitutes ineffective counsel in violation of a Defendant's right to competent counsel.  <u>Turner v. State of Tennessee</u>, 664 F. Supp. 1113, 858 F.2d 1201(6), 940 F.2d 1000(6), <u>Beckham v. Wainwright</u>, 639 F.2d 262(5).  The <u>Turner</u> case is precisely in point here.  The District Court in said case held as follows:

> "Weighed by even these highly deferential standards, Bailey's advice not to accept the two-year offer, or at the very least his failure to recommend acceptance, was well below an "objective standard of reasonableness." *Strickland, supra*, at 688, 104 S.Ct. at 2064.
> Binkley 'recommended strongly' acceptance of the offer at the time; he thought the decision to go to trial was 'ludicrous.' Transcript at 16-17. John Rodgers, who was assistant district attorney general was responsible for the earlier plea offers to Turner, testified that the final two-year offer 'obviously . . . was a great offer and should have been accepted.'  Transcript at 157. James Neal, a well-known criminal defense attorney who represented Carroll in this case, told Binkley contemporaneously that Turner would 'be crazy not to take' the two-year offer.  Transcript at 7.  On *de novo* review of this question, this Court agrees with Judge Kurtz's conclusion that Bailey's actions on the plea

2

288

decision were outside the bounds of reasonableness established by professional norms."
<u>Turner v. State of Tennessee</u>, 664 Fed. Supp. 1113.

In affirming the analysis and conclusion of the District Court, the Court of Appeals in said case held:

> "We agree with the district court's analysis and conclusion. *Accord Johnson v. Duckworth*, 793 F.2d 898, 900-02 (7th Cir.) (criminal defendant has right to effective assistance of counsel in deciding whether to accept or reject proposed plea agreement), *cert. denied*, 749 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986); *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 (3d Cir. 1982) ("the decision to reject a plea bargain offer and plead not guilty is also a vitally important decision and a critical stage at which the right to effective assistance of counsel attaches'); *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. 1981) (incompetent advice to withdraw a negotiated guilty plea and instead stand trial violates defendant's right to effective assistance of counsel).
> <u>Turner v. State of Tennessee</u>, 858 F.2d 1201.

In this case, the Defendant faced a possible life sentence and a virtually certain 20-30 year minimum sentence if convicted, and all of those who the Government's proof was to show the Defendant to have been engaged in a drug conspiracy with were known to be strong government witnesses who would expressly testify to Defendant's guilt. Defendant had a recent prior felony conviction, for the same offense, which was certain to be proved if he testified in the case. Notwithstanding these known facts, counsel for the Defendant not only failed to advise immediate acceptance but actually discouraged and counseled against acceptance of a plea offer of a mere 15 months confinement, from which 15 month sentence there would be deducted several months credit for time served. Such action by counsel was <u>patently unreasonable</u> and <u>actually ludicrous</u>.

Why would any lawyer on earth fail to advise his client to

3

instantly accept such a plea offer under the circumstances here. The Defendant was not a lawyer, Judge, doctor, minister or the holder of a high political office who might lose the license of his profession or his means of livelihood. He had recently served a prior Federal sentence for the same offense, so his reputation and public image was not a high priority. Why would any counsel permit a client in his 40s to gamble his entire lifetime against a few months confinement when the cards were obviously stacked against him by his friend, confidant and alleged partner testifying against him as to every element of the offense and if he took the stand his recent prior conviction for the same offense was certain to be proved. Did he not know that sufficiency of the evidence does not require corroboration of accomplice testimony in a Federal Court? Apart from some self-interest motivation, creating a conflict, what possible theory can be resorted to in an effort to justify such failure by counsel. Significant note should be taken of the fact that a large part of counsel's fee, amounting to thousands of dollars, had not yet been paid, and if such quick and easy resolution of the case by acceptance of said plea offer had occurred, it would be highly unlikely that the balance of said fee would ever have been paid. This possible explanation of the otherwise unexplainable has been held in U.S. v. McClain, 823 F.2d 1457, 1464(11) to deprive a Defendant of a fair trial. In said case the court stated:

> "There is substantial evidence that the United States attorney would not attempt to indict Johnson until Sher's trial ended.
> Therefore, it was in Johnson's best interests for

4

Sher to have a lengthy trial. . . . . .
    This actual conflict of interest adversely affected
the competency of Johnson's representation of Sher.
Johnson's competence was most lacking in the area of plea
negotiations. . . . . .
Exploring possible plea negotiations is an important part
of providing adequate representation of a criminal
client, and this part is easily precluded by a conflict
of interest."

Furthermore, failure to inform a Defendant of a possible life

sentence or a possibility of enhancement of his sentence as a

career offender has been held to constitute ineffective counsel.

Alvernaz v. Ratelle, 831 Fed. Supp. 790, U. S. v. Day, 969 F.2d 39,

43.  In Alvernaz and Day the Courts' stated:

    "There is no doubt the error alleged constitutes a
violation under the first Strickland prong.  As the
California Supreme Court noted,
        We conclude, as have all federal and state courts
        presented with this issue, that . . . where
        counsel's ineffective representation results in a
        defendant's rejection of an offered plea bargain,
        and in the defendant's decision to proceed to trial
        . . . [a claim of ineffective assistance of counsel
        is raised.]
Alvernaz v. Ratelle, 831 Fed. Supp. 790.

    "Knowledge of the comparative sentence exposure
between standing trial and accepting a plea offer will
often be crucial to the decision whether to plead
guilty."
U. S. v. Day, 969 F.2d 39.

Not only will the evidence show a failure of defense counsel to

properly advise the Defendant to immediately accept the plea offer,

but counsel mentally coerced the Defendant against acceptance of

said offer by having told him that he would not represent a client

who snitched or cooperated with the Government.  Similar coercion

on a matter not nearly as critical as acceptance of said plea offer

was held in Nicholas v. Butler, 953 F.2d 1550(11) to constitute

291

ineffective counsel.  In said case, the Court held that the act of defense counsel in telling the Defendant that if he testified he would cease to represent him was violative of the defendant's right to be heard in his own defense and, <u>in and of itself</u>, constituted ineffective counsel.

B.

Defense counsel failed to move for a mistrial <u>or even object</u> to proof by the Government that defendant was guilty of "loansharking" prior to his arrest on May 25, 1985 and that such "loansharking" was a <u>felony offense</u>.  This was highly prejudicial proof of a crime and acts condemned even by the Bible in Exodus 22(25), Ezekiel 22(12) and Deuteronomy 23(19).  Permitting proof that the Petitioner committed wholly unrelated crimes condemned by law and by the Bible could hardly be defense strategy.

In <u>U. S. v. Rusmistle</u>, 716 F.2d 301(5) the Court held that failure to object to proof of personal drug use and association with a group using drugs was ineffective counsel that rendered the Defendant's trial fundamentally unfair and subject to collateral attack therefor.  On the issue of prejudice, the Court stated that the evidence was a swearing match and, thus, certainly less than overwhelming.  In <u>Lyon v. McCotter</u>, 770 F.2d 529(5), the Court held that counsel's failure to object to a prior conviction, <u>in and of itself</u>, constituted ineffective counsel.  In <u>Atkins v. Atty. Gen. v. Alabama</u>, 932 F.2d 1430(11) the Court holds that failure to object to a finger print card <u>that bore a notation thereon of a prior arrest</u>, <u>in and if itself</u>, constituted ineffective counsel.

6

292

In <u>Chatom v. White</u>, 858 F.2d 1479(11) the Court held that defense counsel's failure to object to a scientific test, which had not been discovered in accord with a pretrial order, <u>in and of itself</u>, constituted ineffective counsel.  In <u>Bolander v. State of Iowa</u>, 978 F.2d 1079(8) the court holds that defense counsel's failure to object to a prior statement of the Defendant's wife that he had said he would fix her husband, <u>in and of itself</u>, constituted ineffective counsel.  As to the question of prejudice the court in <u>Bolander</u> stated:

> "The circumstantial evidence is legally sufficient to support a finding of premeditation but the evidence also permits a reasonable doubt."

In <u>Mason v. Scully</u>, 16 F.3d 38(2) the court held that failure of defense counsel to object to a detective testifying to what had been said by a non-testifying co-defendant, <u>in and of itself</u>, constituted ineffective counsel.

### C.

Without making any objection thereto, defense counsel permitted the Government to prove that in 1977, approximately 13 years before the return of the indictment herein, Petitioner engaged in the business of selling quaaludes and methamphetamine. This could hardly be considered as trial strategy designed to somehow endear the Defendant to the jury.

The only purpose and effect of this proof was to show the jury that the Defendant, <u>13 years before</u>, had committed serious crimes for which he had never been punished.  This is 100 times more prejudicial than any of the matters held in the above cases to

7

293

constitute ineffective counsel.

### D.

Undisputed evidence showed Defendant to have engaged in separate drug conspiracies in 1983, 1984 and 1985 which were barred by the statute of limitations, but trial counsel failed to object to the failure of the Court's charge to limit the right to convict to a conspiracy entered into within the period not barred by the statute of limitations.  The Defendant admitted on the stand to numerous drug transactions involving himself and others in 1983, 1984 and 1985.  An ordinary jury would have been compelled to find the Defendant guilty without such a limiting instruction.  Such failure to request or object to the omission of a limiting instruction has been held, in and of itself, ineffective counsel. Lyons v. McCotter, 770 F.2d 529, Ramirez v. State, 873 S.W.2d 757.

### E.

The Superseding Indictment simply alleged that appellant and other persons to the grand jury known and unknown conspired to possess a quantity of cocaine.   (R. 1, P. 43-44)   Thus, the prosecutor was given a blank check to prove up any agreement by Defendant with any person to commit the alleged offense on any occasion.  Competent counsel would have had to have known that the court's charge would follow the indictment and likely also constitute a blank check to the jury to convict regardless if it was the same transaction upon which the grand jury returned the Indictment.  Notwithstanding these certain baleful consequences, Defendant's counsel failed to move for a bill of particulars as to

8

294

whom was intended to be the conspirators, <u>known to the grand jury</u>. Why not?  There is no possibility that such could have been trial strategy.  As is discussed in <u>Krulewitch v. U.S.</u>, 69 S.Ct. 716, the procedures in charging and proving conspiracy offenses certainly should not be enlarged, but, if anything, should be rigidly and narrowly enforced by reason by reason of the inherent dangers in the offense itself.  This blank check given by the indictment to the prosecutor as to proof, and the further blank check which must inevitably follow such indictment into the court's charge, violates in all respects the principles pronounced by the Supreme Court in <u>Russell v. U.S.</u>, 82 S.Ct. 1038, wherein the court held as follows:

> "It is argued that any deficiency in the indictment is these cases could have been cured by bills of particulars.  But it is a settled rule that a bill of particulars cannot save an invalid indictment. . . .
>
> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure.  For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him. . . .
>
> The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge. . . .
>
> A cryptic form of indictment in cases of this kind requires the defendant to go to trial with the chief issue undefined.  *It enables his conviction to rest on one point and the affirmance of the conviction to rest on another*.  It gives the prosecution free hand on appeal to fill in the gaps of proof by surmise or conjecture." (Emph. ours)

There is no possible way to know from the indictment herein whom the grand jury intended to charge Defendant with entering into a conspiracy.  Under the Court's charge, there is no way to tell

*which of the numerous drug transactions*, which might have been deemed a conspiracy by the jury, was actually found to have been proved beyond a reasonable doubt.   The jury could reasonably conclude that evidence would not be admitted into evidence against Defendant unless it could be considered as proving the allegation in the indictment.

We have found no decisions where an indictment alleged that conspirators are known to the grand jury, yet their names were not alleged either in the body of the alleged offense or in the overt acts, and demand was made for said names by motion to dismiss or for a bill of particulars.   However, the following quotations from the following decisions, at least, imply that, in such event, such is necessary:

> "Of course, *at least two persons* are required to constitute a conspiracy but the *identity of the other members of the conspiracy is not needed.*"   <u>Rogers v. U.S.</u>, 71 S.Ct. 438. (Emph. ours)

> "The evidence fails to show any other person, to the grand jury unknown, who could take Freilburger's place and supply the necessary second party to the conspiracy.

> The only other person who could possibly have been a party to the conspiracy was one Meyers.   He was, however, to the grand jury known.
> <u>Worthington v. U.S.</u>, 64 F.2d 939.

On direct appeal, the Court states that this failure of counsel was not prejudicial since the Government would simply have complied with such motion and made the indictment more specific.   <u>U. S. v. Royal</u>, 972 F.2d 643, 650, and cites <u>Morlett v. Lynaugh</u>, 851 F.2d 1521 in support of such conclusion.   In <u>Morlett</u>, the defect in the indictment was merely failing to allege the specific method of

296

coercion, the prosecution's proof only showed one, and such defect did not infect the Court's charge. Here, as shown above, there was evidence of many conspiracies other than that intended to be alleged by the grand jury and said defect resulted in the court's charge requiring a finding of guilty of any drug conspiracy the Defendant was ever involved in, even the undisputed ones which were barred by limitations.

### CONCLUSION AS TO INEFFECTIVENESS AND REMEDY

Each of counsel's deficiencies set out in A, B, C, D and E above, <u>standing alone</u>, clearly constitute ineffective counsel, and considered cumulatively, they make a mockery of the Sixth Amendment's guarantee of effective counsel. The leading decisions as to the remedy therefor hold that the judgment of conviction should be vacated and <u>the plea offer reinstated</u> to permit the Defendant to receive the benefit he would have received had the promise of the Sixth Amendment been fulfilled. <u>U. S. v. Blaylock</u>, 20 F.3d 1458, 1468-1469. <u>Alvernaz v. Ratelle</u>, 831 Fed. Supp. 790, 799, <u>Turner v. State of Tennessee</u>, 940 F.2d 1000, 1002.

### GROUND TWO

<u>ADMISSION, OVER OBJECTION, OF TESTIMONY THAT PETITIONER COMMITTED A MURDER IN VIOLATION OF PETITIONER'S CONSTITUTIONAL RIGHTS TO A GRAND JURY CHARGE AND DUE PROCESS</u>

The opinion of the Court of Appeals herein, in admitting that in overruling a motion in limine and admitting in evidence proof that at a time <u>prior to the alleged conspiracy</u> Defendant sold some known bad dope to Geno Hernandez and that <u>such resulted in his death</u> was error, stated the following:

11

297

> "We are sympathetic to Royal's argument that the evidence of Hernandez's death was <u>improperly admitted</u>. . . . this evidence was <u>completely unnecessary to the government's case and we discern no purpose other than prosecutorial overkill</u> in the <u>government's insistence</u> that it be admitted." (Emph. ours)

The opinion thereafter holds that this flagrantly inflammatory, and prejudicial evidence did not harm Defendant <u>because there was overwhelming proof of his guilt</u> of the alleged conspiracy.

Thus, a new unheard of question is squarely presented to this Court -- <u>can accomplice testimony alone, under a plea bargain that the accomplice will not be prosecuted for any offense, when the defendant has taken the stand and directly contradicted all of said accomplice testimony, constitute such overwhelming evidence of guilt as to render immaterial admission of admittedly improper evidence that a man dies as the result of the defendant selling him known bad dope?  The answer to this question is apparent from the statement in U. S. v. Hinds</u>, 772 F.2d 362, to wit:

> "The policy behind the giving of an accomplice instruction is 'no more than a common sense recognition that an accomplice may have a special interest in testifying, thus casting doubt upon his veracity." <u>Cool v. United States</u>, 409 U.S. 100, 103, 93 S.Ct. 354, 357, 34 L.Ed.2d 335 (1972).  The accomplice is thought to have a 'motive to lie' since he is in a position to extricate himself by incriminating his partner in crime.  Moreover, the possibility of leniency in plea agreements and sentencing <u>renders an accomplice's testimony one to be considered with great care and caution</u>." (Emph. ours)

The sole question of this defendant's guilt was whether he made an oral agreement with Le Beouf that while defendant was in the penitentiary Le Beouf would carry on a drug operation from which Defendant would be entitled to commissions.  Defendant vigorously denied any such agreement and all of the incriminating allegations

12

298

relating thereto.  Le Beouf admitted that he never made any payment to Defendant for any drugs he sold during Defendant's incarceration, that the government agreed to forgo any prosecution of him whatsoever in exchange for his testimony against Defendant, that <u>on his first debriefing</u> by the government he admitted many many large cocaine transactions with numerous people, but <u>never claimed Defendant agreed to be in on any drug operation to be conducted after Defendant went to the penitentiary</u>, <u>that he lied during his first debriefing seeking immunity in several respects</u> and that he incriminated Defendant only on his last debriefing, after he discovered Defendant had sex with his wife.

If proof of any irrelevant extraneous crime that is certain to create inflamed passion against a defendant can be excused on a theory of 'an overwhelming preponderance of evidence of guilt', when the only evidence is plea bargained accomplice testimony, then, the due process right to a fundamentally fair trial is extinct in our country.

### GROUND THREE

<u>ADMISSION, OVER OBJECTION, OF ILLEGALLY OBTAINED EVIDENCE IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION</u>

The Trial Court's overruling of Defendant's motion to suppress the items listed under the search warrant herein was prejudicial error for the reason that the plastic bags and scales found in the house and admitted in evidence against Defendant were patently harmful to him, and the affidavit for said search warrant failed to show any probable cause to support any reasonable belief that said items were likely to be in said house.  Said plastic bags and

299

scales were described in the affidavit and search warrant as
follows:  "<u>Material used in the packaging, cutting, weighing and
distributing illegal controlled substances</u>."

In <u>U. S. v. Freeman</u>, 865 F.2d 951(5) the Court of Appeals held
that an affidavit for a search warrant to search a residence for
items <u>such as drug paraphernalia is stale</u> where no drug activity
was shown to have been ongoing at any time during the <u>preceding six
months</u>.  The affidavit for the search warrant of Defendant's
residence <u>affirmatively showed the last known drug activity by
Defendant to have been one year and nine months before</u> presentation
of the said affidavit to the magistrate.  The Court of Appeals
opinion avoided consideration of said Fourth Amendment violation by
use of the Good Faith Exception.  The undisputed evidence was that
the affidavit was presented <u>after</u> the defendant was indicted on
this case and awaiting trial and that the affidavit was a product
of and reviewed by the Assistant United States Attorney Steven L.
Snyder, <u>who was then preparing the case for trial</u>.  The questions
here are (1) Whether <u>a prosecutor, after indictment</u>, can claim the
Good Faith Exception when, <u>pending a trial on said indictment, he
obtains a search warrant to procure evidence in his upcoming trial</u>,
and (2) Whether an affidavit for a search warrant for drug
paraphernalia that reveals on its face no drug activity by the
defendant or in the residence in question for <u>one year and nine
months prior</u> can be upheld on the Good Faith Exception?  Said <u>U. S.
v. Freeman</u>, supra, holds that even though a search warrant for IRS
material and drug paraphernalia may not be <u>stale</u> as to the IRS

material, it is <u>severable</u> and will be <u>stale</u> as to the drug paraphernalia <u>if it is specifically referred to</u> in the affidavit for the warrant and the affidavit fails to show any drug activity in the residence in excess of six months.  The <u>Freeman</u> case further holds that the "plain view doctrine" cannot save the drug paraphernalia from exclusion, because having specifically referred to it in the warrant, it must be presumed that a specific search was conducted therefor.

### GROUND FOUR

<u>THE SENTENCE OF THE PETITIONER TO 30 YEARS CONFINEMENT UNDER THE GUIDELINES, ALTHOUGH THE STATUTORY MAXIMUM UNDER THE ALLEGATIONS OF THE INDICTMENT WAS 20 YEARS RENDERS THE SENTENCE VOID TO THE EXTENT IT EXCEEDS 20 YEARS CONFINEMENT</u>

Defendant was sentenced to 30 years <u>under the Guidelines</u>, although the <u>statutory maximum</u> under the <u>allegations of the indictment</u> herein was 20 years.

In <u>Mistretta v. U.S.</u>, 109 S.Ct. 647, 657, 664, the Supreme Court stated as follows:

> "Congress instructed the commission that these <u>sentencing ranges</u> must be consistent with the pertinent provisions of Title 18 of the United States Code and <u>could not include sentences in excess of the statutory maxima</u>. . . . . Given the consistent responsibility of federal judges to pronounce sentence within the statutory range established by Congress, we find that the role of the Commission in promulgating guidelines for the exercise of the judicial function bears considerable similarity to the role of this court in establishing rules of procedure under the various enabling acts." (Emph. ours)

In other words the <u>quantity of drugs used to fix punishment under the Guidelines</u> is not limited by the quantity alleged in the indictment, but the sentence fixed by the Guidelines <u>cannot exceed</u>

15

301

the statutory maximum Congress fixed for the <u>acts alleged in the</u>
<u>indictment</u>.  <u>Meyers v. U.S.</u>, 116 F.2d 601(5), <u>Packnett v. U.S.</u>, 503
F.2d 949(5), and <u>Theriault v. U.S.</u>, 434 F.2d 212(5), held that
<u>failure to allege in the indictment facts</u> constituting an
aggravation of an alleged offense <u>that will increase the statutory</u>
<u>punishment range, precludes the enhancement of the statutory range</u>
<u>of punishment</u> of the alleged offense.  The Court of Appeals opinion
here, in holding otherwise, decides the question solely on whether
quantity is an element of the offense proscribed by 21 U.S.C. §
841(1), possession with the intent to distribute <u>some</u> quantity of
cocaine.  That is not the question here.  Defendant agrees that
quantity is not an element of the alleged offense under § 841(a).
The question here is not whether quantity is an element of the
offense under 21 U.S.C. § 841(a); the question is "what is the
<u>statutory</u> maximum sentence fixed by Congress for violating §
841(a)?"  <u>Defendant's position is simply that application of the</u>
<u>sentencing Guidelines cannot extend a sentence beyond the maximum,,</u>
<u>possible penalty provided by Congress for the acts Defendant is</u>
<u>alleged in the indictment to have committed</u>.  The decisions in <u>U.</u>
<u>S. v. Alarez</u>, 735 F.2d 461(110, <u>U.S. v Crockett</u>, 312 F.2d 622(10),
and <u>U.S. v. Moore</u>, 540 F.2d 1088(DC), hold precisely this and are
directly in conflict with the decision in this case.  <u>In this case</u>
<u>Defendant was assessed a sentence that was ten years beyond the</u>
<u>statutory maximum</u>.

Rule 11(c)(1) mandatorily requires a Trial Judge, before
accepting a plea of guilty or nolo contendere, to determine that

302

the defendant understands the "maximum possible penalty provided by
law." In addition thereto, it requires advising the defendant that
the court will be required to consider any "applicable guidelines."
Thus, it is manifest that "maximum penalty provided by law" is not
considered a part of the guidelines. We respectfully pose the
following question:  if a defendant enters a guilty plea to an
indictment merely alleging conspiracy to distribute cocaine,
without any allegation as to amount, what would this Honorable
court advise a defendant to be the maximum possible sentence?
Obviously, the advice would be and the advice that has been given
in every past guilty plea to such allegation is that the maximum
possible penalty is twenty (20) years. We submit that no Trial
Judge in the hundreds of guilty pleas entered to this offense has
ever advised the defendant that the maximum possible penalty for
conspiracy to distribute some cocaine only was life imprisonment.
A failure to accurately advise a defendant prior to accepting his
guilty plea of the maximum statutory penalty for the acts he is
charged by the indictment to have committed renders any such plea
invalid. Canal zone v. Tobar, 565 F.2d 1321. U.S. v. Jaramillo-
Suarez, 857 F.2d 1368(9). Thus, if the opinion on direct appeal is
correct, then virtually all pleas of guilty to an indictment
alleging distribution of or a conspiracy to distribute cocaine,
without alleging any amount, were invalid pleas. We pose one other
question. If Rule 11(c)(1) does not refer to the maximum statutory
penalty for the acts the indictment alleges a defendant committed,
then, how is it possible for a trial judge to advise a defendant on

303

a guilty plea as to the maximum penalty provided by <u>law</u> when, at that time, there has not yet been any determination or evidence as to the amount of dope a defendant might be chargeable with <u>under the guidelines</u>.   As clearly shown in <u>Mistretta v. U.S.,</u> supra, sentencing ranges fixed by the sentencing Guidelines cannot exceed the <u>statutory</u> maximum <u>fixed by Congress</u> for a defendant's commission of the <u>acts alleged in the Grand Jury Indictment</u>.

In the only two cases cited in the body of the opinion on direct appeal, <u>U.S. v. Lokey</u>, 945 F.2d 825, 856(5), and <u>U.S. v. Morgan</u>, 835 F.2d 79, 81(5) the indictments alleged the amount exceeded 100 kilograms, but the sentence did not exceed the statutory maximum for a 21 U.S.C. § 841(a) offense.   Obviously, since quantity is not an element of § 841(a) the failure to <u>prove</u> the allegation that the quantity exceeded 100 kilograms was immaterial as long as the sentence did not exceed the statutory maximum of § 841(a).   Said opinion in its footnote cites <u>U. S. v. McHugh</u>, 769 F.2d 860, 868(1), <u>U.S. v. Campuzano</u>, 905 F.2d 677, 679(2) and <u>U. S. v. Gibbs</u>, 813 F.2d 596, 599-601(3).   In <u>McHugh</u>, supra, the court held "<u>proving</u> the <u>amount</u> of marijuana <u>is an essential element</u> of the offense <u>only under</u> 21 U.S.C. § 841(b)(6)." In <u>Campuzano</u>, supra, the indictment actually alleged the quantity to be in <u>excess of 5 kilograms</u> and the sentence was <u>within the</u> maximum <u>statutory range</u> for § 841(a).   In <u>Gibbs</u>, supra, the majority held that the indictment alleged the excessive quantity sufficiently to raise the statutory maximum to that of § 941(b)(6), but the dissent held that the allegation of quantity in the

18

indictment was not clear enough.  The sentence herein is void in excess of the statutory maximum 20 years.

### GROUND FIVE

<u>PETITIONER WAS SENTENCED UPON A MISCONCEPTION BY THE TRIAL COURT<br>AS TO THE MAXIMUM SENTENCE</u>

This Honorable Court in sentencing the Defendant herein, acted under the mistaken belief that the maximum sentence was life imprisonment (see judgment page 5 and PSR page 14).  At the time of sentencing Defendant he was 37 years of age with a life expectancy of approximately 31 years.   Thus, the number of years which Defendant was sentenced was a little less than his actual life expectancy.  The PSR and this Honorable Court mistakenly considered the maximum to be life imprisonment by reason of a motion to enhance sentence filed by the United States Attorney for the first time <u>after Petitioner's conviction</u>.  Said enhancement is void for lack of due process in that notice to Defendant of such intended enhancement was not given until <u>after his conviction</u>.  Obviously, if proper notice of said enhancement had been given the plea bargain offer would have been instantly accepted by Petitioner. Also, if the Trial Court had known the true maximum, his sentence would likely have been lesser.

The PSR herein shows that notice that the Government would seek enhancement of Defendant's sentence to a enhancement of life imprisonment was first given to the Defendant on May 7, 1991 after his trial and conviction.  Based thereon, the PSR upon which the trial court relied and acted upon set the maximum sentence at life imprisonment.  A Defendant's rights of due process and to not be

**19**

305

held to answer for or be punished for an infamous crime unless charged by a ground jury, under the Fifth Amendment to the Constitution of the United States, and to know the nature and cause of the accusation against him, under the Sixth Amendment to the Constitution of the United States, serve to prohibit any new enhancement allegations against a Defendant <u>after trial and conviction</u>. Such are constitutional limitations of the jurisdiction of a court to impose any sentence based on enhancement allegations, <u>first presented after trial simply by a United States Attorney's allegations</u>, and if a sentencing court exercises its discretionary sentencing power based on a misconception as to the maximum sentence by reason thereof, such sentence is and should be vacated and resentencing had.

The attempted imprisonment for Defendant's prior conviction is not only barred by the above constitutional provisions but is expressly barred by the statute. <u>Kelly v. U.S.</u>, 29 F.2d 1107(7).

WHEREFORE, Petitioner prays that the conviction and sentence herein be vacated and the Government ordered to reinstate its prior plea offer of 15 months confinement under the indictment herein.

Respectfully submitted:

W. V. DUNNAM, JR.
Post Office Box 8418
4125 West Waco Drive
Waco, Texas 76714-8418
Telephone (817) 753-6437
Facsimile (817) 753-7434

State Bar No. 06262000
ATTORNEY FOR JON HAROLD ROYAL

**20**

306

## CERTIFICATE OF SERVICE

    The undersigned certifies that a true and correct copy of the above instrument was served upon the attorney(s) of record for all parties to the above cause by _U.S. Mail_ this _13th_ day of _June_, 19 96 .

_W.V. Dunnam, Jr._
W. V. DUNNAM, JR.

307